UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKY RAY SHARPES,

               Plaintiff,

v.

NANCY A. BERRYHILL,

               Defendant.

Case No. C17-1425JLR

**ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS**

## I.    INTRODUCTION

Plaintiff Ricky Ray Sharpes seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Mr. Sharpes contends the Administrative Law Judge ("ALJ") (1) misevaluated his symptom testimony; and (2) misevaluated the opinion of Peter Weiss, Ph.D. (Op. Br. (Dkt. # 9) at 4-12.)[1] As discussed below, the court REVERSES Defendant Nancy A. Berryhill's (the

---

[1] Mr. Sharpes's counsel failed to comply with the court's scheduling order (Dkt. # 8), as he provided only a general issue statement that "the secretary's decision is not supported by substantial evidence nor was the proper legal standard applied," and did not list the errors alleged on page one of the brief. (*See* Op. Br. at 4.) The court has nonetheless undertaken to determine the errors Mr. Sharpes contends the ALJ made. In the future, counsel is reminded that failure to comply with court orders is grounds for sanctions. Further non-compliant briefs will be stricken.

"Commissioner") final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Sharpes has not engaged in substantial gainful activity since February 3, 2015, the alleged disability onset date.

**Step two:** Mr. Sharpes has the following severe impairments: osteoarthritis; degenerative disc disease; status post cervical fusion; fibromyalgia; migraines; minimal degenerative osteophytosis and mild degeneration of the knees; and major depressive disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Mr. Sharpes can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). He can stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He must be permitted to change position from sitting to standing, or standing to sitting every 30 minutes at the workstation. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He can never crawl. He can occasionally perform overhead reaching bilaterally. He can frequently handle and finger bilaterally. He must avoid concentrated exposure to cold, vibrations, and hazards. He is limited to unskilled and semi-skilled tasks consistent with a specific vocational preparation ("SVP") of up to four. He can have occasional public contact.

**Step four:** Mr. Sharpes cannot perform past relevant work.

**Step five:** Mr. Sharpes can perform jobs that exist in significant numbers in the national economy, including office helper, mail clerk, and delivery driver. Therefore, Mr. Sharpes has not been disabled since February 3, 2015, the alleged disability onset date.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

(Administrative Record ("AR") (Dkt. # 7) at 13-24.) The Appeals Council denied Mr. Sharpes's request for review, rendering the ALJ's decision final. (*Id.* at 1.)[4]

### III. DISCUSSION

Mr. Sharpes, as the claimant, bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### A. Evaluation of Mr. Sharpes's Testimony

Mr. Sharpes contends that the ALJ erred in evaluating his testimony concerning his impairments. (*See* Op. Br. at 4-10.) The ALJ found that Mr. Sharpes's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." (AR at 19.) The Ninth Circuit has "established a two-step analysis for determining the extent to

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. *Id.* The ALJ found that Mr. Sharpes met this first step because his medically determinable impairments could reasonably be expected to cause some of the symptoms he alleged. (AR at 19.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (stating that the ALJ's decision to discredit the claimant's testimony should be upheld if the ALJ provided valid reasons supported by the record even if the ALJ also provided one or more invalid reasons).

The ALJ, finding no evidence of malingering, discredited Mr. Sharpes's symptom testimony because it was inconsistent with the medical evidence in the record, and Mr. Sharpes "has sought very little treatment." (AR at 21.) In reaching this conclusion, the ALJ failed to properly analyze Mr. Sharpes's symptoms in light of the realities of his fibromyalgia diagnosis, which is undisputed. (*See id.* at 15.)

The Ninth Circuit recently addressed treatment of symptom testimony in fibromyalgia cases in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017). At the outset, the court noted that "[f]or a long time, fibromyalgia was 'poorly understood within much of the medical community.'" *Id.* at 656 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)). Fibromyalgia is unusual in that patients have normal strength, sensation, and reflexes; their joints appear normal; and "'[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain.'" *Revels*, 874 F.3d at 656 (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting)). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Revels*, 874 F.3d at 656 (quoting *Benecke*, 279 F.3d at 590). Accordingly, ALJs must construe the evidence "in light of fibromyalgia's unique symptoms and diagnostic methods" when evaluating a claimant's disability. *Revels*, 874 F.3d at 662.

The ALJ's analysis of Mr. Sharpes's testimony falls prey to the very pitfalls the Ninth Circuit noted in *Revels*. The ALJ discounted Mr. Sharpes's testimony because "[t]here is very little objective evidence supporting any limitations." (AR at 21.) The

medical imaging showed only mild findings; other than one or two occasions, no swelling or edema was present; and Mr. Sharpes's strength and sensation remained intact. (*Id.*) All of these facts are to be expected in a fibromyalgia patient, and show no inconsistency with Mr. Sharpes's testimony. As such, they are not clear and convincing reasons to reject Mr. Sharpes's testimony.

The ALJ further rejected Mr. Sharpes's testimony because he "has sought very little treatment." (*Id.*) The ALJ noted that Mr. Sharpes had only seen a doctor about four times in the year-and-a-half prior to the hearing. (*Id.*) He was not on any medications at the time of the hearing. (*Id.*) And Mr. Sharpes had not been referred for physical therapy, injections, or surgery. (*Id.*)

The ALJ's reasons again fall short of clear and convincing. "[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute a sufficient reason for discrediting a claimant's symptom testimony. *Fair*, 885 F.2d at 603. But where the claimant provides a reason for not seeking or complying with treatment, the ALJ cannot disregard the claimant's testimony without addressing why the reason given is insufficient. *See Trevizo*, 871 F.3d at 680.

Mr. Sharpes testified that he had not seen a rheumatologist recently because he moved several times in the months prior to the hearing. (AR at 38-39.) He was not on any medication at the time of the hearing because he had not seen a new rheumatologist yet, and his previous medications had side effects or were ineffective. (*Id.* at 39-40.) The ALJ did not address either explanation for Mr. Sharpes's infrequent treatment, and thus

erroneously rejected Mr. Sharpes's testimony.

The ALJ's conclusion as to the extent of treatment is also unsupported by substantial evidence in the record. First, that Mr. Sharpes was not referred for physical therapy,[5] injections, or surgery is irrelevant. The record does not establish that those are treatment options for Mr. Sharpes's condition. Second, the record is not as clear as the ALJ suggests regarding whether Mr. Sharpes's treatment was conservative or routine. Mr. Sharpes had multiple visits to hospital emergency departments. (*See, e.g.*, *id.* at 357, 371, 383, 425.) He reported diffuse pain throughout various parts of his body. (*See, e.g.*, *id.* at 320, 328, 338, 357, 412, 463.) Without a clearer explanation, the ALJ could not call this treatment routine and use it as a basis to reject Mr. Sharpes's testimony.

The ALJ's error was not harmless. An error will not be deemed harmless unless the court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The court cannot say that the ALJ's residual functional capacity determination accounted for all of Mr. Sharpes's limitations even though his testimony was discredited. The residual functional capacity does not include any limitation for absenteeism, for example. As discussed below, the

---

[5] Mr. Sharpes was in fact offered physical therapy for hip pain in July 2014, but refused it because it reportedly made his pain worse and did not help. (AR at 330.) The ALJ did not point to this as a reason for rejecting Mr. Sharpes's testimony, and failed to address Mr. Sharpes's explanation for refusing this treatment, so it could not be the basis for the ALJ's rejection of Mr. Sharpes's symptom testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (stating that the court must review the ALJ's decision based on the reasoning given, and cannot substitute "*post hoc* rationalizations" for the decision).

matter must consequently be remanded to address the ALJ's harmful error.

**B.     Evaluation of Dr. Weiss's Opinion**

Mr. Sharpes next contends that the ALJ erred in evaluating Dr. Weiss's opinion regarding the extent of Sharpes's mental impairments. (*See* Op. Br. at 10-11.) An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). If the examining doctor's opinion is contradicted by another doctor, the ALJ must still provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Weiss performed a psychological evaluation of Mr. Sharpes on July 9, 2015. (AR at 420.) He performed a mental status examination and questioned Mr. Sharpes in a number of areas to determine his cognitive abilities. (*Id.* at 421-22.) Based upon the evaluation, Dr. Weiss diagnosed Mr. Sharpes with major depressive disorder. (*Id.* at 423.) Dr. Weiss opined that Mr. Sharpes's cognitive abilities were adequate, and that he had moderate difficulties in memory, concentration, persistence, and social functioning due to his depression. (*Id.*) He further noted that Mr. Sharpes has "moderate to marked

problems with overall adaptation as a result of his depression." (*Id.*) Dr. Weiss concluded that Mr. Sharpes's depression would most likely respond to psychotherapy and pharmacotherapy, and that "his prognosis is good if he pursues outpatient psychiatric treatment." (*Id.*)

The ALJ gave only partial weight to Dr. Weiss's opinion "as the severity [of Mr. Sharpes's depressive symptoms] is not entirely supported by the medical records, as [Mr. Sharpes] has never sought any psychiatric care." (*Id.* at 22.)

The ALJ's first reason for disregarding Dr. Weiss's opinion—that it is not entirely supported by the medical records—is too vague to meet the legal standard. The ALJ did not identify what portions of Dr. Weiss's opinion were unsupported beyond stating that Mr. Sharpes "was able to perform many of the concentration and memory tests Dr. Weiss administered." (*Id.*) At best, then, the ALJ simply disagreed with Dr. Weiss's interpretation of his own test results. "Because ALJs are as a rule not doctors, 'courts have regularly warned ALJs not to attempt to interpret test results or other raw medical data.'" *Mkrtchyan v. Colvin*, No. C14-1209JLR, 2015 WL 2131222, at *6 (W.D. Wash. May 5, 2015) (quoting *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004)). If the ALJ had doubts about Dr. Weiss's interpretation of his test results, then he needed to obtain an opinion from a medical expert to address them. *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-4-14 & I-2-5-34, *available at* https://www.ssa.gov/OP_Home/hallex/hallex.html.[6] As it stands, the ALJ's first reason

---

[6] HALLEX "is strictly an internal Agency manual, with no binding legal effect on the

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 9

for disregarding part of Dr. Weiss's opinion was not sufficient, and was thus error.

The ALJ's second reason for discrediting Dr. Weiss's opinion—that Mr. Sharpes "has never sought any psychiatric care"—is equally dubious. A claimant's failure to seek treatment for depression is not a substantial basis for disregarding a doctor's assessment of the claimant's mental condition. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Although the ALJ erred, reversal is not necessary here, as Mr. Sharpes fails to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). Unlike consideration of Mr. Sharpes's testimony, there is no indication that alternative treatment of Dr. Weiss's opinion would have changed the ultimate outcome here. An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

Dr. Weiss did not include any functional limitations in his opinion. In fact, Dr. Weiss noted that Mr. Sharpes "would have little difficulty understanding or carrying out

---

Administration or [the] court." *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008) (citing *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000)). Nonetheless, as an agency manual, it is "'entitled to respect' under *Skidmore v. Swift & Co.*, [323 U.S. 134] (1944), to the extent that it has the 'power to persuade.'" *Clark*, 529 F.3d at 1216 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

instructions," and that Mr. Sharpes's depression would most likely respond well to a treatment regimen of psychotherapy and pharmacotherapy. (AR at 423.) He stated merely that Mr. Sharpes had "moderate" difficulties in memory, concentration, persistence, and social functioning, but did not state that these difficulties translate into functional work limitations. (*See id.*) Thus, any error by the ALJ in his treatment of Dr. Weiss's opinion was immaterial to the ultimate disability determination, and was therefore harmless. *See Molina*, 674 F.3d at 1123.

**C.     Remand**

Mr. Sharpes asks the court to remand for an award of benefits. (Op. Br. at 12.) The court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 808 F.3d 1041, 1044 (9th Cir. 2017). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

The appropriate remedy here is remand for further proceedings. The court is not in a position to reweigh the evidence, nor can it conclude that the ALJ would be required to find Sharpes disabled after properly evaluating his testimony. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather

than remand for payment of benefits, where the record reveals conflicts, ambiguities, or gaps). On remand, the ALJ should reevaluate Mr. Sharpes's testimony and further develop the record as necessary to address any changes to the residual functional capacity determination. The ALJ must also reevaluate his conclusions at steps four and five of the disability determination in light of any changes to Mr. Sharpes's residual functional capacity.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

DATED this 23rd day of May, 2018.

JAMES L. ROBART
United States District Judge